acm

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **PATRICK C. LYNN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **CASE NO. 03-3464-JAR** |
| | ) | |
| **RAY ROBERTS, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

### MEMORANDUM AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2254

On December 5, 2003, petitioner Patrick C. Lynn filed *pro se*, a petition for writ of habeas

corpus. (Doc. 1.) Since that date, petitioner has filed numerous motions, many of which were ruled on

by Judge Crow before this case was reassigned to the undersigned judge. In this Court's most recent

order, an additional five motions were denied, and this Court granted petitioner a final extension of time

to file his Traverse, which was due on July 18, 2005. Petitioner has failed to file his Traverse by the

deadline. However, petitioner has filed five other motions in which he requests recusal, hearings,

orders, sanctions, and an emergency intervention. (Docs. 61, 62, 68, 74, 76.) The respondents have

filed three motions to strike documents filed by the petitioner for failure to serve copies upon opposing

counsel. (Docs. 66, 69, 73.) Respondents have also filed a motion for sanctions. (Doc. 72.) The

Court will first address the many pending motions, and then will turn to the petition for writ of habeas

corpus. As explained more fully herein, the Court **denies** petitioner's motions along with his petition

for a writ of habeas corpus.

## I.      Petitioner's Failure to File Traverse

Since respondents filed their Answer on December 21, 2004, petitioner has repeatedly asked this Court for extensions of time to file his Traverse.  In its last order, this Court granted petitioner his final extension of time to file his Traverse by July 18, 2005.  Petitioner has failed to file timely, and the Court will not grant any further extensions.  The Court recognizes, however, that in petitioner's numerous pleadings filed with this Court, he has effectively traversed respondents' Answer, with factual assertions, legal arguments, and numerous citations to and attachments to the record.[1]  Therefore, the Court will construe petitioner's motions as his Traverse, but the Court will not allow petitioner to file a Traverse for his failure to meet the Court's ordered deadline.

In several of his pending motions, petitioner seeks an order allowing him to videotape his Traverse.  Since the Court will not allow any further extensions for petitioner to file his Traverse, this motion is now moot.  Regardless, the Court would deny such request.  Petitioner acknowledges that his Traverse has been due since January 2005, but he claims he has not filed his Traverse because he has been deliberately prevented from properly drafting, copying, and mailing it.  Yet, since respondents' Answer was filed, petitioner has successfully filed fifteen pleadings spanning an excess of two hundred pages.  The Court finds disingenuous petitioner's claim that he has been prevented from filing his Traverse.  Petitioner has had ample opportunity to file a written Traverse, and he has failed to file it in a timely manner.  The Court finds no reason to allow petitioner to videotape his Traverse.

---

[1]For example: Doc. 61 is six pages; Doc. 62 is three pages; Doc. 64 is four pages; Doc. 65 is twenty-four pages and attaches five pages of exhibits; Doc. 67 is eight pages and attaches nineteen pages of exhibits; Doc. 70 is nine pages and attaches eight pages of exhibits; Doc. 74 is two pages and attaches two pages of exhibits; and Doc. 76 is two pages.

Petitioner also requests that the Court allow him to file a Traverse exceeding the twenty-five page limit.  Likewise, petitioner's request is now moot.  Regardless, the Court would otherwise find no valid reason to depart from the twenty-five page requirement.  The respondents' Answer was twenty-one pages in length.  Twenty-five pages is a sufficient amount of space for petitioner to address all of respondents' arguments.  Additionally, petitioner has filed an enormous amount of pleadings with this Court, most of which contain rambling and disingenuous allegations along with derogatory and inappropriate language.  Even if petitioner was allowed to file his Traverse beyond the deadline, the Court would find that increasing petitioner's page limit would only provide more space for petitioner to abuse the judicial process when it is otherwise not necessary to develop petitioner's arguments.  Therefore, petitioner's requests relating to the filing of his Traverse are denied.

## II.     Motion(s) for Orders, Hearing, and Emergency Intervention

In his numerous motions and filings, among other relief, petitioner requests a copy of Doc. 68, which he claims he never received.  Petitioner filed a "Rebuttal to Respondent's [sic] Motion to Strike and Demand for Severe Sanctions and Motion for Orders" which was entered by the Clerk of the Court's office as Docs. 67 and 68.  When a party's motion requests multiple forms of relief, it is the practice of the clerk's office to enter the motion multiple times to account for the multiple requests.  Because petitioner made requests in his motion for both orders and sanctions, the clerk's office entered his order twice as Docs. 67 and 68.[2]

Petitioner also requests this Court provide him with a Table of Contents of the state court

---

[2]For petitioner's reference, this practice also occurred with Docs. 70 and 71; Docs. 72 and 73; and Docs. 74 and 75.

record concerning petitioner's criminal case, direct appeal, and state habeas action because he alleges that matters have been withheld or not produced.  As this Court stated in its previous order, the entire record was provided to this Court.  The Court spent considerable time inventorying two large boxes of records, and the Court is satisfied that all pleadings, orders and correspondence have been produced by respondents.  The Court will not again address petitioner's request to order respondents to produce the entire state court record when respondents have already done so.  Additionally, the Court finds no valid reason to spend additional time creating a table of contents when the Court is satisfied that the entire record has been produced.

All of petitioner's other requests have been previously denied by this Court and/or Judge Crow.[3]  As stated in its last order, this Court will *not* entertain motions previously ruled upon, nor "revisit" Judge Crow's rulings as petitioner requests.  Therefore, this Court denies petitioner's renewed and repeated requests for: oral argument; a video conference hearing; orders compelling prison officials to provide petitioner with pen, paper, copies, envelopes, and postage stamps to prosecute this case, beyond the amount of such supplies provided pursuant to the prison's administrative policies and procedures; an order compelling prison officials to accept monies tendered by petitioner's family for the

---

[3] For example, in a June 6, 2005 Order (Doc. 60), this Court denied petitioner's requests for: orders compelling prison officials to provide petitioner with pen, paper, copies, envelopes, and postage stamps to prosecute this case; an order compelling prison officials to accept monies tendered by petitioner's family for the expense of postage stamps and/or supplies exceeding petitioner's account; an order compelling the respondents to produce the entire state court record concerning petitioner's case; appointment of counsel; discovery of booking room videotape and other evidence from the trial; video conference hearing; orders compelling the FBI to investigate alleged corruption by participants in petitioner's state court prosecution; orders for deposition of the court reporter and participants in the criminal trial; and orders for discovery of email correspondence among respondents and other internal work product concerning this litigation.  Additionally, in an Order entered on or about November 17, 2004 (Doc. 45), Judge Crow, *inter alia*, denied petitioner's claims regarding the handling of his mail, denial of manila mailing envelopes, installation of a plexiglass shield around his cell, and restrictions on petitioner's telephone usage, postage, paper and envelopes.

expense of postage stamps and/or supplies exceeding petitioner's account, and/or the establishment of a special account for these purposes; orders compelling the respondents to produce the entire state court record concerning petitioner's criminal case; discovery of booking room videotape and other evidence from the trial; orders for deposition of participants in the criminal trial; and orders for discovery of email correspondence among respondents and other internal work product concerning this litigation.

Further, as stated repeatedly in previous orders, petitioner's claims about mail handling, legal access to the court, and confinement, are complaints about the conditions of confinement, not cognizable in this habeas action.[4]   Petitioner also has filed a Motion for Emergency Intervention (Doc. 76) in which he claims that prison officials engaged in a "shake down" search of petitioner's cell and seized five legal boxes containing documents pertaining to petitioner's cases along with writing supplies and personal hygiene items.[5]   Petitioner's motion complains about conditions of confinement, which are not appropriate issues to resolve in a habeas action such as this case.   Therefore, the Court **denies** petitioner's motion.

## III.    Motion for Recusal

In addition to the most recent Motion for Recusal (Doc. 61), petitioner has made numerous

---

[4]*See Boyce v. Ashcroft*, 251 F.3d 911, 918 (10th Cir. 2001), *vacated as moot by Boyce v. Ashcroft*, No. 98-1280, 2001 WL 1154994 (10th Cir. Oct. 1, 2001) (explaining conditions of confinement claims should be brought under civil rights laws).

[5]A exact copy of this motion was also filed in another pending case filed by the petitioner as Doc. 123. *Lynn v. Simmons, et al.*, No. 01-3422-MLB (D. Kan. Oct. 14, 2005).

requests for removal of the judges assigned to his case.[6]   The recusal of a judge is required where

personal bias or prejudice by a judge for or against a party is demonstrated, or where the impartiality of

the judge might reasonably be questioned.[7]   The district court considers "whether a reasonable person,

knowing all of the relevant facts, would harbor doubts about the judge's impartiality."[8]   The judge is

under as much obligation not to recuse when there is no reason to do so.[9]   Prior adverse rulings against

a litigant are not in themselves appropriate grounds for disqualification.[10]   In his case, petitioner

complains of adverse rulings by the undersigned judge, and he accuses the undersigned judge of

ignoring the issues in the case.  In subsequent filings, the petitioner also accuses the undersigned judge

have having a "hidden agenda," and he criticizes a previous order as containing "blatant errors and

hypocropsy [sic]."  The Court has examined the arguments presented by petitioner and finds no valid or

reasonable factual basis for petitioner's claim of bias and partiality by the undersigned judge.

Therefore, petitioner's motion for recusal is **denied**.

## IV.    Respondents' Motion to Strike Docs. 18, 67, and 71 for Failure to Serve

---

[6]Petitioner first filed a "Motion for Recusal/Change of Judge" (Doc. 25) on August 10, 2004 when this case
was before Judge Crow.  Petitioner then  filed a "Motion for Orders and Request for Expedited Hearing or Change of
Judge" (Doc. 57) on April 14, 2005 after this case had been reassigned to the undersigned judge.  Additionally, Chief
Judge Lungstrum has filed two orders in this case (Docs. 15, 58) in response to letters sent to him by the petitioner.
In these orders, Judge Lungstrum denied petitioner's requests for reassignment of his case to another judge.

[7]28 U.S.C. §§ 144, 455.

[8]*Nichols v. Alley*, 71 F.3d 347, 350-51 (10th Cir. 1995) (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th
Cir. 1993)).

[9]*Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

[10]*Cooley*, 1 F.3d at 993-94; s*ee also Liteky v. United States*, 510 U.S. 540, 555 (1994) (holding that judicial
rulings are "almost never" valid grounds for bias motion; further, judicial opinions based on facts introduced or
events occurring during course of proceedings are not a basis for bias motion "unless they display a deep-seated
favoritism or antagonism that would make fair judgment impossible").

Respondents request this Court strike several pleadings filed by petitioner (Docs. 18, 67, 71) for failure to serve copies upon opposing counsel.  Fed. R. of Civ. P. 5(a) requires:

> [E]very order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties.

One of the purposes of Rule 5 is "to insure a full exchange of the written communications among the litigants so that each party has a copy of all papers affecting him; as a result, constant reference to the file at the courthouse in the clerk's office by the parties or their lawyers is rendered unnecessary."[11] Parties are obligated to serve documents upon opposing counsel regardless of a party's financial hardship or *pro se* status.[12]

Petitioner admits that he has never served documents upon respondents.[13]  In fact, in the certificate of service for Doc. 18, petitioner states: "I humbly request the Clerk to serve Respondents, as I am prevented from doing so."[14]  Petitioner blames his failure to properly serve on the limited amount of postage stamps provided pursuant to the prison's administrative policies and procedures.

---

[11]4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1141 (3d ed. 2002).

[12]*See, e.g.*, *Lindell v. Litscher*, 212 F. Supp. 2d 936, 943 (W.D. Wis. 2002) (stating that one of the reasons for the court's holding that it would no longer hear multi-prisoner lawsuits was that, when complying with the Fed. R. Civ. P. 5 requirements, "[t]he cost to prisoner *pro se* litigants of managing a multi-plaintiff suit quickly outpaces their ability to pay costs").

[13]For example, petitioner states: "I have never served opposing counsel a single motion since this case was filed that I am aware of."  (Doc. 67 at 5.)  Petitioner also admits: "Its [sic] true, I did not serve opposing counsel a copy of Doc. #67."  (Doc. 70 at 1.)

[14](Doc. 18 at 4.)

This excuse, however, does not justify petitioner's failure to comply with Rule 5.

As described above, the Court denies all of petitioner's repeated requests in Docs. 67 and 71. Additionally, as described below, the Court strikes Doc. 71 for using abusive language. Therefore, respondents' arguments are moot with respect to these documents. In Doc. 18, petitioner filed a motion for leave to make a more definite statement with his more definite statement attached, which Judge Crow granted. Counsel for respondents asserts that he was never aware of this filing because petitioner failed to serve respondents. Additionally, counsel was not notified by the Court of this document's filing because it was filed before the Court issued a Show Cause Order and before counsel had entered an appearance in this case. Respondents claim that because they were not properly served, they suffered prejudice in that they were not able to address the petitioner's claims in Doc. 18 in respondents' Answer.

The Court agrees that petitioner violated Rule 5 by failing to serve Doc. 18 upon respondents. However, the Court will not resort to the extreme measure of striking petitioner's document at this time without first giving petitioner a warning that he must comply with the procedural rules.[15]  While respondents argue that they have suffered prejudice in drafting their Answer without reference to Doc. 18 because it was never served upon opposing counsel, the Court has done an independent analysis of the new claims in petitioner's more definite statement. As described more fully below, the Court finds that even if it were to consider petitioner's additional statements and were to allow the government

---

[15]*See United States v. Int'l Bus. Mach. Corp.*, 68 F.R.D. 618, 618 (S.D.N.Y. 1975) (holding that striking documents was warranted for failure to serve on opposing counsel when "[d]espite the court's repeated admonitions and attempts to bring IBM into compliance with the applicable procedural rules, once again defendant's papers are flagrantly defective, and once again they will be rejected by this court").

additional time to answer, petitioner has failed to allege a Constitutional violation that entitles him to habeas relief.  Therefore, the respondents have not suffered prejudice by petitioner's failure to serve Doc. 18 nor have they suffered prejudice in the Court's subsequent consideration of this pleading in analyzing the habeas petition.

In response to respondents' motion to strike Doc. 18, petitioner asks this Court to order a search of counsel's computer records to verify that he has viewed the Court's online records of this case and Doc. 18, thereby showing that he had notice of petitioner's filing.  The Court finds that such an order is unnecessary, especially in light of the Court's denial of respondents' motion to strike Doc. 18.

Therefore, the Court will allow petitioner's documents to remain in the record, but the Court reminds petitioner that he is required to serve upon the respondents a copy of *every* pleading, motion, or other paper that he files with the Court.  Serving documents upon opposing counsel is petitioner's responsibility and not the responsibility of the Court or the Clerk's office.  After filing 22 post convictions actions in this Court, petitioner is well aware of this rule.  Additionally, petitioner is obligated to demonstrate that he has complied with the service requirements by filing a certificate of service with his papers.[16]  Petitioner's failure to comply with these instructions in the future, should he file additional pleadings, will result in the Court's striking such pleadings, motions, or other papers.[17] For now, however, respondents' motion to strike is **denied.**

---

[16]Fed. R. Civ. P. 5(d).

[17]*See Dotson v. Blood Ctr. of S.E. Wis.*, 988 F. Supp. 1216, 1222 (E.D. Wis. 1998) (reminding a *pro se* plaintiff of the service and filing requirements of Fed. R. Civ. P. 5 and warning *pro se* plaintiff that the Court will strike documents in the future if he fails to serve defendants). *See also Kirsch v. Smith*, 853 F. Supp. 301, 304 (E.D. Wis. 1994).

## V.      Respondents' Motion to Strike Docs. 70 and 71[18]

Although not stricken for petitioner's failure to serve, the Court finds it appropriate to strike one

of petitioner's pleadings for impugning the character of the respondents and using derogatory, obscene,

and even threatening language.  Petitioner has been warned repeatedly by Judge Crow and this Court

that the use of such language will not be tolerated.  However, petitioner has repeatedly disregarded

these warnings by employing profane and inappropriate language directed at respondents, counsel, and

the Court.  Petitioner calls opposing counsel a "dispicable [sic] liar."[19]  He refers to Kansas Department

of Corrections personnel as "prison hacks," "cretins," and "rats."[20]  Additionally, he refers to the

Court's rules and procedure as "bullshit."[21]  He also asks, "What kind of Judge lets this crap go on?"[22]

The most worrisome language contains abusive threats directed at opposing counsel.  Petitioner claims

that he "obsessively fantasize[s] about making [opposing counsel] a quadraparapelegic [sic] so he can

see how helpless it feels."[23]  Petitioner also states: "I truly wish I could get close to opposing counsel:

He'd see reality."[24]

---

[18]While respondents request the Court strike Doc. 71, the Court will refer to both Docs. 70 and 71 in this
request because they are the same document.  As described above, when a party's motion requests multiple forms of
relief, it is the practice of the clerk's office to enter the motion multiple times to account for the multiple requests.
Because petitioner made requests in his motion for both orders and sanctions, the clerk's office entered his motion
twice as Docs. 70 and 71.

[19](Doc. 70 at 4.)

[20](*Id.* at 4-6.)

[21](*Id.* at 3.)

[22](*Id.*)

[23](*Id.*)

[24](*Id.*)

The Tenth Circuit has held that writings that "do little more than attempt to impugn (without basis) the integrity of the district judge" are "intolerable, and we will not tolerate them."[25] "'Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates.  This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers.'"[26] "'[I]f the complaint or other pleadings are abusive or contain offensive language, they may be stricken *sua sponte* under the inherent powers of the court.'"[27]  Further, a court has such discretion to strike pleadings despite the leniency typically given to *pro se* plaintiffs.[28]  The Fifth Circuit has stated: "This court simply will not allow liberal pleading rules and *pro se* practice to be a vehicle for abusive documents.  Our *pro se* practice is a shield against the technical requirements of a past age; it is not a sword with which to insult a trial judge."[29]

The Court imposes a similar response in this case to restore order, respect, and decorum in light of petitioner's abusive and inappropriate filings.  The Court will **grant** respondents' motion to

---

[25]*Garrett v. Selby, Connor, Maddux & Janer*, ___ F.3d ___, 2005 WL 2293889, at *4 (10th Cir. Sept. 21, 2005).

[26]*Id.* (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993)).

[27]*Id.* (quoting *Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir. 1981) (citing Fed. R. Civ. P. 12(f): "[U]pon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.")).

[28]*Id.* (citing *Theriault v. Silber*, 579 F.2d 302 (5th Cir. 1978)).

[29]*Theriault*, 579 F.2d at 303; *see also Carrigan v. Cal. State Leg.*, 263 F.2d 560, 564 (9th Cir. 1959) ("Perhaps the easiest procedure in this case would be to dismiss the entire appeal as frivolous, and strike the briefs and pleadings filed by appellant . . . as either scandalous, impertinent, scurrilous, and/or without relevancy. Undoubtedly such action would be justified by this Court.").

strike Docs. 70 and 71.[30]  **Additionally, the Court again warns petitioner that he is not to impugn the character of the respondents or their counsel; nor use derogatory, profane, or inappropriate language in his pleadings.  If petitioner should file additional documents in this case, the Court will strike future pleadings containing such language for violation of the Court's instructions.**

## VI.    Motion for Sanctions

Both petitioner and respondents have requested this Court to strike pleadings and to impose sanctions against the opposing party for filing abusive pleadings.  Fed. R. Civ. P. 11(c)(1)(a) states, in pertinent part,

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award attorney's fees incurred in presenting or opposing the motion.

Rule 11 sets forth mandatory requirements that a moving party must comply with before a court is permitted to order sanctions.[31]  The moving party must submit the motion for sanctions separate and apart from any other motion or request, and specifically describe the conduct that allegedly violates the

---

[30]Despite the Court's decision to strike Docs. 70 and 71, titled "Petitioner's Second Rebuttal, Second Demand for Severe Sanctions, and Motions for Orders," this motion would not effect the merits of petitioner's actions.  Similar to other filings by petitioner, this pleading contains rambling, unsupported allegations along with requests for orders previously denied by this Court and Judge Crow.  As discussed *infra*, these requests would be denied even if the Court entertained Docs. 70 and 71.

[31]*See* Fed. R. Civ. P. 11(c)(1)(A); *see also Aerotech, Inc. v. Estes*, 110 F.3d 1523, 1528-29 (10th Cir. 1997).

rule.[32]  The moving party must serve the motion on the opposing party.[33]  If, after 21 days, the opposing

party does not withdraw the challenged paper, claim, defense, contention, allegation, or denial, the

moving party may file its motion for sanctions with the court.[34]

       The Court denies petitioner's request for sanctions because he failed to comply with the

mandatory requirements of Rule 11.  He did not file a motion for sanctions separate from other motions

or requests.  Instead, he asks for sanctions in another "Motion for Orders" responding to respondents'

Motion to Strike Doc. 18.  Petitioner believes that counsel has had access to this document through the

court's online filing system, therefore, counsel should not complain about petitioner's failure to serve the

document.  The Court finds no merit in this argument.  Counsel's notification to the Court of petitioner's

failure to follow Rule 5 is warranted when petitioner has not served any documents in this case on

opposing counsel.  Furthermore, petitioner failed to serve the motion for sanctions, along with every

other motion filed in this case, on the respondents or give them the requisite "safe harbor" period to

correct the alleged inappropriate action.

       Petitioner also requests the Court to impose sanctions on prison officials who allegedly

participated in a "shake down" search of petitioner's prison cell and seized various items from his

possession.  As stated above, petitioner's claims about confinement are not cognizable in this habeas

action.[35]  The Court cannot impose sanctions on prison officials in a habeas action such as this case.

---

[32]*See* Fed. R. Civ. P. 11(c)(1)(A).

[33]*Id.*

[34]*Id.*

[35]*See Boyce v. Ashcroft*, 251 F.3d 911, 918 (10th Cir. 2001), *vacated as moot by Boyce v. Ashcroft*, No. 98-1280, 2001 WL 1154994 (10th Cir. Oct. 1, 2001) (explaining conditions of confinement claims should be brought under

Therefore, the Court **denies** petitioner's request for sanctions and **denies** his request to strike respondents' filings.

The Court does, however, grant respondents' motions for sanctions along with granting respondents' Motion to Strike Doc. 71 as previously described.  Petitioner has been repeatedly warned by this Court and Judge Crow that he is not to file abusive pleadings containing derogatory, profane, or inappropriate language.  Petitioner has repeatedly violated this order.[36]  Therefore, the Court finds it appropriate to impose sanctions on petitioner for his inappropriate filings in direct violation of previous orders.  The Court recognizes that this order is dispositive of the case.  However, should petitioner file additional pleadings, the Court warns the petitioner that the Court will strike additional filings which use such inappropriate and abusive language.  The Court also reserves the ability to impose additional sanctions against petitioner if he continues to violate orders and to file inappropriate documents.[37]

## VII.    Petition for Writ of Habeas Corpus

--------

civil rights laws).

[36]For example, petitioner repeatedly refers to prison officials and personnel as "prison hacks," "evil pig prison hack keepers," and "prison hack tyrants." (Docs. 61, 62, 67, 70, 75.)  Petitioner shows no respect for the Court when he states his "hatred and contempt for hypocrites wearing judicial robes."  (Doc. 67.)  Petitioner uses words such as: "Chissakes [sic]," "damn," "ass," "screwing," "bitching," "bullshit," "shit," and "crap."  (Docs. 62, 65, 70.)  Petitioner has even resorted to using symbols, such as "*@*!" to indicate the use of profanity in his pleadings.  (Doc. 62).  Additionally, as previously mentioned, Docs. 70 and 71 are replete with profane, inappropriate, and even abusive language directed at counsel, prison officials, and the Court.  As stated above, the Court orders these documents stricken from the record.

[37]*See, e.g.*, *Green v. Price*, 76 F.3d 392, 1996 WL 56075, at *3 (10th Cir. Feb. 9, 1996) (unpublished table opinion) (allowing the district court to impose sanctions such as limiting the number of filings it will accept in a pending matter to those necessary to the advancement of the action in order to control prisoner's access to the court without completely prohibiting it).  The Court notes that the Kansas state courts have resorted to placing filing restrictions on the petitioner based on his voluminous filings and attempts "to harass the victim, witnesses, police investigators, judges, and others involved in his case."  *State of Kansas* ex. rel. *Stovall v. Lynn*, 975 P.2d 813, 815 (Kan. 1999).

Having addressed all of the pending motions, the Court now turns to petitioner's request for habeas corpus relief.  After considering the parties' submissions, the Court denies petitioner's request for habeas relief because he failed to show that his constitutional rights were violated by ineffective assistance of counsel, prosecutorial misconduct, suppressed exculpatory evidence, errors made by the trial court, or judicial misconduct.

### A.      Factual and Procedural Background

Petitioner was charged in the District Court of Johnson County, Kansas, with aggravated burglary, aggravated kidnaping, rape, and aggravated sodomy.  The evidence presented at a jury trial established that on the evening of May 15, 1996, petitioner forced his way into the apartment of the victim.  The victim had returned to her apartment after exercising at a local gym, and she was preparing for bed.  She heard a knock at her door, which she thought might be her sister.  When she opened the door slightly, petitioner forced his way into the apartment.  Petitioner forced the victim into the bedroom where he kissed her and inserted his fingers into her vagina.  He then ordered her to suck on his penis and forced it into her mouth.  A neighbor heard suspicious noises coming from the victim's apartment, and called the police.  When the police arrived, petitioner allowed the victim to answer the door.  She answered the door naked and cried to police that petitioner was raping her.  Police arrested petitioner on the scene.  At the time of the arrest and throughout his trial, petitioner maintained that he had a consensual sexual relationship with the victim.  His defense at trial was consent, but the victim denied knowing the petitioner.  Medical evidence was also presented at trial which supported the victim's claim that the sexual conduct was not consensual.  The jury convicted petitioner on all charges.

Petitioner appealed his convictions and sentences.  His appellate counsel raised six issues on

15

appeal:  (1) the elements of the aggravated kidnaping charge were not established by evidence adduced at trial; (2) the trial court erred in refusing to pre-instruct the jury once sworn to hear the case on the defense theory as well as the prosecution theory; (3) the trial court erred in ruling on the admissibility of evidence under Kansas law; (4) prosecutorial misconduct; (5) trial court erred in failing to allow petitioner his right of allocution and by imposing an upward departure sentence; and (6) trial court erred in denying petitioner's *pro se* motion for new trial.  Additionally, petitioner filed a rambling, sixty page *pro se* brief in which he raised claims of ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and suppression of exculpatory evidence by the prosecution.  His convictions were affirmed, but his sentences were vacated and remanded twice for resentencing.  Petitioner then filed a state habeas action which was dismissed because petitioner's appeal was still pending.  Petitioner is currently imprisoned, serving a sentence of 49 years and 8 months.

### B.  Standard of Review

Because petitioner "filed his habeas petition after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) govern this [proceeding]."[38]  The AEDPA "'circumscribes a federal habeas court's review of a state-court decision.'"[39]  Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as

---

[38]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997)), *cert. denied*, 540 U.S. 973 (2003).

[39]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003)), *cert.denied*, 540 U.S. 916 (2003).

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.[40]

A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court when presented with facts that are "materially indistinguishable from a relevant Supreme Court precedent," or if the state court "applies a rule that contradicts the governing law" set forth in Supreme Court cases.[41]   A decision is an unreasonable application of clearly established federal law if a "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."[42] Unreasonable application of facts includes an unreasonable extension of a principle, or an unreasonable refusal to extend a principle to the facts at hand.[43]   The courts are to employ an objective standard in determining what is unreasonable.[44]

Although unreasonable determinations of fact are a second basis for a writ, a state court's determination of a factual issue shall be presumed to be correct.[45]   The petitioner has the burden of

---

[40]28 U.S.C. § 2254(d).

[41]*Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[42]*Id.* at 413.

[43]*Id.* at 407.

[44]*Id.* at 409.

[45]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003), *cert. denied*, 540 U.S. 973 (2003); *Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002).

rebutting this presumption by clear and convincing evidence.[46]  "This presumption does not extend to legal determinations or to mixed questions of law and fact."[47]  "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.'"[48]  "Ultimately, our review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for evaluating state-court rulings."

Additionally, because petitioner is a *pro se* plaintiff, the Court must construe *pro se* pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[49]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[50]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[51]

Because the Court must only accept petitioner's well-pleaded factual allegations, the Court cannot incorporate other documents as requested by petitioner.  In his motions, petitioner incorporates documents filed in his other state and federal cases to support his allegations.[52]  The Court cannot

---

[46]*Martinez*, 330 F.3d at 1262; *Fields*, 277 F.3d at 1221.

[47]*Martinez*, 330 F.3d at 1262 (citing *Herrera v. Lemaster*, 225 F.3d 1176, 1178-79 (10th Cir. 2000)).

[48]*Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

[49]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[50]*Id.*

[51]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[52]For example, in his Petition Under 28 U.S.C. § 2254, petitioner "asserts and incorporates by reference, his facts and evidence cited above and evidentiary exhibits presented in . . . #02-3378-SAC."  (Doc. 1 at 15.)  Petitioner also attempts to incorporate the facts alleged in his appellate counsel's brief for petitioner's state court appeal.  "These 6th and 14th Amendment claims are found in Mr. Bartee's Briefs argued to the State's Appellate Courts/District Court."  (Doc. 18 at 2.)

consider these documents when determining this case on the merits; therefore, the Court will only

consider the facts alleged by petitioner in the pleadings filed in this habeas action.

### C.    Analysis

Petitioner raises four grounds in his request for habeas review: (1) ineffective assistance of

counsel; (2) prosecutorial misconduct; (3) suppression of newly discovered exculpatory evidence; and

(4) errors by the trial court that violated his Sixth and Fourteenth Amendment rights.  Petitioner also

filed a Motion for Leave to Make a More Definite Statement in which he attempts to clarify the grounds

in his petition which he believed were "somewhat lacking."  The Court has liberally construed

petitioner's more definite statement.  Comparing the petition with the more definite statement, the Court

finds three additional claims: (1) errors by the trial court that violated petitioner's rights under the

Kansas Constitution and *Brady v. Maryland*[53]; (2) judicial misconduct in the denial of petitioner's *pro*

*se* motion for a new trial; (3) trial court error in refusing petitioner's request "to present his claims

(federal) of trial error before resentencing."[54]  As described above, respondents claim that because they

were never served with petitioner's more definite statement, they were prejudiced in drafting their

Answer without reference to the more definite statement.  Although petitioner erred procedurally by

failing to serve respondents, the Court will consider the claims in petitioner's more definite statement.

As shown below, the Court finds that petitioner's three additional claims lack merit and denies

petitioner's motion for relief on all grounds.  Therefore, respondents are not prejudiced by petitioner's

---

[53]373 U.S. 83 (1963).

[54]In this document, petitioner again complains about mail handling and legal access to the courts.
Petitioner has been repeatedly reminded that a habeas action is not the proper cause of action for his complaints of
confinement.

failure to serve.

### 1.      Ineffective Assistance

Petitioner claims that he received ineffective assistance of counsel.  He raised these issues in his state proceedings.  The state court reviewed these claims under *Chamberlain v. State*,[55] which adopts the standards of established federal law, as set forth in *Strickland v. Washington*.[56]  Applying *Strickland's* two prong inquiry, the court concluded that these claims had no merit.  In order to succeed on a claim of ineffective assistance of counsel under *Strickland*, a petitioner must show both that his counsel's performance was constitutionally deficient, such that he was not functioning as the "counsel" guaranteed by the Sixth Amendment, and that he was prejudiced by his counsel's errors.[57] To prove constitutionally deficient performance, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.[58]  If he can meet this standard, then a petitioner must establish prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[59]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[60]

In addition, in the context of ineffective assistance claims, "the AEDPA establishes deferential

---

[55]694 P.2d 468 (Kan. 1985).

[56]466 U.S. 668 (1984).

[57]*Id.* at 687.

[58]*Id.* at 687-88.

[59]*Id.* at 694.

[60]*Id.*

standards of review for state-court factual findings and legal conclusions."[61]  The Tenth Circuit has

stated:

> If the federal claim was adjudicated on the merits in the state court, "we
> may only grant federal habeas relief if the habeas petitioner can
> establish that the state court decision 'was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States,' or 'was based
> on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.'"[62]  Furthermore, our concern
> is only whether the state court's result, not its rationale, is clearly
> contrary to or unreasonable under federal law.[63]

Petitioner first complains that his counsel was ineffective in giving advice to petitioner regarding

the trial court's ruling on the admissibility of petitioner's criminal history.  Petitioner's prior criminal

record includes charges of sexual misconduct and at least one prior rape conviction.  Petitioner's trial

counsel, understanding how harmful this evidence could be to petitioner's consent defense, opposed the

State's efforts to introduce this evidence to the jury.  Before trial, the court issued a ruling delaying any

decision on the admissibility of prior crimes until certain conditions were met and the State attempted to

introduce such evidence.  The court's order stated that if petitioner asserted that the incident involved

consensual sex, then the court would consider whether evidence of petitioner's prior criminal history

would be admissible.  Petitioner's counsel interpreted the order to mean that if petitioner did not testify

that he had consensual sex with the victim, then the evidence of prior crimes would not be admitted.

However, after further inquiry, the trial court stated that its ruling was broader than defense counsel's

---

[61]*Mathews v. McKune*, 133 Fed. Appx. 512, 514 (10th Cir. 2005) (affirming district court's denial of habeas relief for petitioner claiming ineffective assistance of counsel).

[62]*Id.* (quoting *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (quoting 28 U.S.C. § 2254(d)(1)-(2))).

[63]*Id.* (citing *Saiz*, 392 F.3d at 1176).

understanding in that consent could be implied by the previous testimony.

At that time, petitioner had begun testifying, but had not testified about the contact between the petitioner and victim which led to the charges. The trial court's clarification of the ruling led petitioner to cease his testimony, and defense counsel moved for a mistrial. The court denied the motion. Petitioner also requested a mistrial based on his counsel's ineffective assistance. The court denied this request. When the trial resumed in front of the jury, the court advised the jury of petitioner's decision to cease testifying and not to subject himself to cross examination. His previous testimony was not stricken upon the prosecution's request. After the defense rested, the prosecution requested the court's permission to introduce evidence of petitioner's criminal history. The court denied the request, and the evidence was never presented to the jury.

Petitioner has not established that counsel's performance was ineffective under *Strickland*. First, counsel's performance was not deficient because it did not fall below an objective standard of reasonableness. The court's initial ruling was contingent upon certain conditions being met. Counsel's attempts to understand and clarify the nature of these conditions show the reasonableness of his performance. Secondly, petitioner was not prejudiced by counsel's performance. Petitioner's testimony was stopped before he could further open the door to the admission of his prior crimes, and the court never allowed this evidence to be presented to the jury. Therefore, petitioner cannot satisfy the two requirements of *Strickland*. The Kansas Court of Appeals reasonably applied federal law, and correctly denied petitioner's claims of ineffective assistance of counsel.

Petitioner also complains that his counsel was ineffective in that he "redacted crucial information from the discovery and charging document, and secretly agreed to withhold the Complainant's

preposterous claim of virginity without consulting petitioner."[64]   The redacted information complained of

by the petitioner was the victim's name and address on the charging document.  This information was

redacted to protect the victim's privacy.  Petitioner cannot show how counsel's performance was

deficient or how he was prejudiced by this reaction under *Strickland*.  Both counsel and the petitioner

knew the identity of the victim, and the redaction from the charging document in no way affected the

defense.

Petitioner's allegations of a secret agreement to withhold evidence of the victim's virginity arise

from a bench conference held during the trial.  During the testimony of the nurse who examined the

victim after the alleged crime, the prosecution asked the judge, outside of the jury's hearing, if he could

advise the witness not to mention the victim's virginity in her testimony.  At this bench conference,

petitioner's counsel stated on the record that he agreed with the prosecution that such evidence should

not be introduced to the jury and that he did not want any reference of the victim's virginity to appear in

the record.  Counsel's performance was clearly not deficient during this bench conference when the

petitioner's defense was consent.  Petitioner asserted that he and the victim had been involved in a

sexual relationship before the night of the alleged rape.  Any evidence of the victim's virginity would

have severely damaged this defense.  Further, such evidence would have been extremely prejudicial to

the defendant in that the jury would hear that he raped a virgin.  Defense counsel acted reasonably by

advocating for the exclusion of this evidence, and petitioner fails to show how the statements during the

bench conference amounted to ineffective assistance.

The Court finds that there are no other ineffective assistance of counsel claims before the Court

---

[64](Doc. 18 at 3.)

because petitioner fails to allege any other grounds in his petition or his more definite statement. However, since petitioner has filed over forty documents in this case spanning hundreds of pages and containing rambling allegations against everyone involved in his state court proceeding, the Court, out of an abundance of caution, will address petitioner's additional ineffective assistance claims made in the state court proceedings.

In the state proceedings, petitioner argued that his counsel was ineffective in failing to properly cross examine witnesses and to make adequate objections.  Counsel's actions are usually based on informed, strategic choices.[65]  "Counsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy."[66]  "Mere failure to object to evidence does not render an attorney ineffective."[67]  Here, petitioner has failed to show how counsel's actions were deficient to overcome the presumption that such actions were part of a trial strategy.  Additionally, petitioner cannot show that he was prejudiced by his counsel's performance.

Petitioner also criticized his counsel for failing to challenge the State's DNA evidence.  Again, such a challenge would contradict petitioner's consent defense.  Because petitioner contended at trial that his sexual relationship with the victim was consensual, the identity of the attacker, which would be established by DNA evidence, was irrelevant.  Counsel's failure to challenge this evidence was part of a reasonable strategy which conformed with the defense's theory of consent.  After reviewing all of

---

[65]*Strickland v. Washington*, 466 U.S. 668, 961 (1984).

[66]*Richie v. Mullin*, 417 F.3d 1117, 1124 (10th Cir. 2005) (citing *Pickens v. Gibson*, 206 F.3d 988, 1001-02 (10th Cir. 2000); *Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999)).

[67]*Yarrington v. Davies*, 992 F.2d 1077, 1080 (10th Cir. 1993) (citing *Watson v. Marshall*, 784 F.2d 722, 726 (6th Cir. 1985)).

petitioner's ineffective assistance claims, the Court determines that the Kansas Court of Appeals reasonably applied federal law, and correctly denied petitioner's claims of ineffective assistance of counsel.

### 2.    Prosecutorial Misconduct

Without any specificity, petitioner broadly accuses the prosecution of misconduct in his petition. In his more definite statement, he accuses the prosecutor of fraud "regarding the issue of KSA 60-455 evidence."[68] K.S.A § 60-455 prohibits the admission of criminal history as the basis for an inference that the person committed another crime but is admissible to prove some other material fact such as motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake. The prosecution requested the court to allow the introduction of evidence of petitioner's criminal history. After petitioner presented a consent defense, the prosecution wanted to rebut the defense theory by showing his intent to rape the victim through evidence of his criminal history. The trial court denied the prosecution's request. Petitioner has not shown how the prosecution fraudulently used the Kansas statute. Furthermore, the evidence of his prior criminal history was never admitted.  The Court therefore finds that the prosecution's attempts to admit petitioner's criminal history were not contrary to federal law.

The petitioner fails to allege any additional facts to support his claims of prosecutorial misconduct. Once again, out of an abundance of caution, the Court will address petitioner's arguments made at the state level in analyzing his prosecutorial misconduct claim. In his state appeal, petitioner complained of statements made by the prosecutor in a pretrial motion, in its opening statement, in its

---

[68](Doc. 18 at 2.)

direct examination of a witness, in its cross examination of the petitioner's father, and in closing arguments.  The Kansas Court of Appeals found that most of the comments were either not improper or, at most, amounted to harmless error.  The court did find improper a comment regarding petitioner's failure to continue his testimony.  It also found that the prosecution's comment, that the pants petitioner wore on the night of his arrest smelled of creosote, was not supported by the evidence.  However, the court determined that these comments did not violate petitioner's right to a fair trial nor his Fourteenth Amendment due process rights.  Because the record contained "overwhelming evidence" in support of the victim's testimony and the evidence supporting the defense theory was "weak," the court found that the prosecutor's improper comments were harmless.[69]

While the prosecutor's comments may have been improper, "not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation."[70]  "Rather, to warrant habeas relief, 'it is not enough that the prosecutors' remarks were undesirable or even universally condemned.'"[71]  "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."[72]  In this case, while the prosecutor's comments were improper, the Court does not find that such comments prevented the jurors from considering the evidence fairly.  As the state appellate court properly noted, the evidence against petitioner was overwhelming.  The victim testified that she had never met petitioner before the

---

[69]*State v. Lynn*, No. 78,565, at 15-16 (Kan. Ct. App. Mar. 24, 2000).

[70]*Neill v. Gibson*, 278 F.2d 1044, 1061 (10th Cir. 2001) (citations omitted).

[71]*Id.* (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

[72]*Darden*, 477 U.S. at 181.

night he broke into her apartment and raped her.  A neighbor testified that she called police after hearing a woman scream "with desperation and fear."  A police officer testified that the victim answered her apartment door naked and hysterically yelling that she had been raped.  The evidence of clothing in the apartment corroborated the victim's version of events.  The nurse and physician who examined the victim testified that injuries to her neck and labia were consistent with her story.  Furthermore, the petitioner's defense was weak in that there was no evidence that the petitioner and the victim had a consensual relationship.  Petitioner's father testified that petitioner had known the victim for six weeks which was contrary to  petitioner's telling police that he had known her two weeks.  Because there was overwhelming evidence supporting petitioner's guilt and a lack of mitigating evidence, the Court does not find that the prosecutor's comments influenced the jury's verdict or otherwise rendered petitioner's trial fundamentally unfair as to make the resulting conviction a denial of due process.

### 3.      Suppressed Exculpatory Evidence and Newly Discovered Evidence

Petitioner also fails to specify what evidence was suppressed during trial or what evidence has been newly discovered.  To the extent petitioner is complaining about the redacted information from the charging document, the Court has already explained above that this information was redacted to protect the victim's privacy and the redaction in no way violated petitioner's federal rights.

Petitioner also complains of *Brady* violations.  "Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[73]  Petitioner fails to allege what evidence was suppressed by the government in violation of *Brady*.  Even if he did, his claim

---

[73]*Brady v. Maryland*, 373 U.S. 83, 87 (1963).

would be procedurally barred in this Court because the Kansas state courts never addressed

petitioner's *Brady* arguments.[74]

Petitioner generally refers to the discovery of new DNA evidence, but the Court does not find

that such evidence exists.  Further, the Court fails to understand petitioner's argument that access to

DNA evidence would demonstrate his innocence.  Petitioner has always contended, even in his most

recent filings with this court, that he had a consensual, sexual relationship with the victim which started

about six weeks before the alleged rape.  Petitioner maintains that he had consensual sex with the victim

the night of his arrest.  Police officers found petitioner in the victim's apartment with his shirt unbuttoned

and his pants and belt undone.  Since identity was never an issue in the trial and petitioner admits having

sex with the victim, additional DNA evidence would not support his innocence.  The Court finds that

even if there was additional DNA evidence, petitioner fails to establish that he is entitled to habeas

relief.

### 4.    Trial Court Errors

Petitioner broadly alleges in his petition that trial errors violated his Sixth and Fourteenth

Amendment rights.  In his more definite statement, petitioner more specifically alleges trial court errors

and claims that such errors violated his rights under the Fourteenth Amendment, the Kansas

Constitution, and *Brady*.  Petitioner is not entitled to habeas relief on his claims of trial court error when

---

[74]*See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

he failed to exhaust his state court remedies as required by § 2254.  Like his requests for

*Brady* evidence above, petitioner cannot raise arguments of trial court errors that he failed to raise in his

direct appeal in the state courts and failed to pursue in a state post-conviction proceeding under K.S.A.

§ 60-1507.[75]

Petitioner complains that the trial court abused its discretion in failing to sequester the jury,

denying petitioner a post-trial hearing to confront his accusers, imposing sanctions on petitioner for his

attempts to contact the jurors, preventing petitioner from presenting federal claims of trial error before

resentencing, and failing to appoint new counsel after counsel admitted his misinterpretation of the

court's ruling regarding the admission of petitioner's prior crimes.[76]  Because none of these arguments

was raised in state proceedings, the Court cannot consider any of these issues.

Regardless of this procedural bar, petitioner is still not entitled to relief.  The trial court did not

err in failing to sequester the jury.  "The decision to sequester 'is left to the sound discretion of the trial

judge.'"[77]  The petitioner must demonstrate that the failure to sequester the jury resulted in actual

prejudice to his or her right to a fair trial.[78]  The Tenth Circuit has affirmed a district court's decision not

---

[75]*See Gales v. Bruce*, 136 Fed. Appx. 179, 180 (10th Cir. 2005) (dismissing petitioner's appeal of district court's denial of habeas relief for petitioner's failure to exhaust state court remedies).

[76]In his state appeal, the Kansas Court of Appeals denied petitioner's argument that the trial court erred in failing to appoint counsel for his motion for a new trial.  Petitioner has not raised this argument in his habeas appeal, but rather he argues that the trial court should have appointed him new counsel in the middle of the trial when the ruling regarding the admission of criminal history was clarified.

[77]*United States v. Floyd*, 81 F.3d 1517, 1528 (10th Cir. 1996) (quoting *United States v. Hall*, 535 F.2d 313, 326 (10th Cir. 1976)).

[78]*Id.* (citing *Hall*, 535 F.2d at 326-27).

to sequester the jury in more highly publicized trials than petitioner's state court criminal trial.[79]  The trial court also did not err in denying petitioner a post-trial hearing to confront his accusers because petitioner had such an opportunity during the jury trial.[80]  The trial court did not err in imposing sanctions on petitioner for his attempts to contact the jurors after the trial when petitioner has no right to do so.[81]  The trial court did not err in preventing petitioner from presenting federal claims of trial error before resentencing when petitioner had ample opportunity to present such claims in other state proceedings such as a direct appeal or a habeas action.  Finally, the trial court did not err in failing to grant petitioner's request for appointment of new counsel in the middle of the trial.  As shown above, counsel's misunderstanding of the court's ruling on the admission of criminal history was not deficient performance and did not prejudice petitioner so that his Sixth Amendment rights were violated under *Strickland*.  Therefore, petitioner is not entitled to habeas relief for the court's failure to appoint him new counsel.

Although petitioner does not specifically allege that the trial court erred in its ruling regarding the admission of petitioner's criminal history, the Court, again out of an abundance of caution, will address

---

[79]*See, e.g., United States v. McVeigh*, 119 F.3d 806, 815 (10th Cir. 1997) (holding that district court did not abuse its discretion in electing not to sequester the jury during the several month long trial involving the Oklahoma City bombing).

[80]U.S. Const. amend. VI (stating "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him").  To the extent petitioner is referring to his right to confront the jury after his convictions, he is afforded no such right under the United States Constitution.

[81]Kan. Sup. Ct. R. 169 allows post-trial communications between the attorneys and jurors, but does not mention that this opportunity is available to the parties.  In the federal courts of Kansas, juror communications are prohibited unless permitted by the court.  D. Kan. R. 47.1(b) reads: "Under no circumstances except by order of the court in its discretion, and under such terms and conditions as it shall establish, shall any party . . . examine or interview any juror . . . ."  "Interviews of jurors by persons connected with a case are not favored, however, except in extreme situations."  *United States v. Dunn*, 961 F. Supp. 249, 250 (D. Kan. 1997) (citation omitted).

this argument.  As described above, the trial court entered a ruling delaying any decision on the admissibility of prior crimes until certain conditions were met and the State attempted to introduce such evidence.  The court's order stated that if petitioner asserted that the incident involved consensual sex, then the court would consider whether evidence of petitioner's prior criminal history would be admissible to show intent.  Petitioner's counsel interpreted the order to mean that if petitioner did not testify that he had consensual sex with the victim, then the evidence of prior crimes would not be admitted.  At trial, petitioner's father testified that petitioner had introduced him to the victim over the telephone.  Afterwards, petitioner testified about two encounters he had with the victim before the night of the alleged rape.  At this point, the court recessed for the day.  The following morning, petitioner's counsel addressed the court outside of the presence of the jury to clarify the ruling and to construct his direct examination of petitioner so he would not open the door for the admission of petitioner's prior criminal history.  The court then stated that intent had already been placed in issue by implication of the previous testimony.  Counsel requested a recess to consult with petitioner, and afterwards petitioner decided not to continue his testimony.

Petitioner argued in his state appeal that this delayed ruling denied him a fair trial.  Kansas courts may properly take a motion in limine under advisement, reserving the right to rule on the motion when the evidence arises at trial.[82]  The court's order stated that once intent became an issue, the State could attempt to admit evidence of petitioner's prior crimes.  The trial court properly reserved its ruling until the matter arose at trial.  Additionally, the trial court's ruling during trial did not force petitioner to cease testifying.  The trial court informed the parties that intent was already an issue by implication after

---

[82]*State v. Reeves*, 671 P.2d 553, 558 (Kan. 1983).

31

the testimony by petitioner and his father. Petitioner could have continued his testimony because the door had already been opened, but petitioner made the decision to stop testifying. Further, the trial court denied the State's introduction of the criminal history evidence so the petitioner cannot show that the court's delayed ruling resulted in prejudice that would deny him a fair trial.

      5.        **Judicial Misconduct**

Petitioner argues that he is entitled to habeas relief because of judicial misconduct. Petitioner asserts that the trial court engaged in judicial misconduct by failing to grant his motion for a new trial and an evidentiary hearing, by imposing sanctions for his attempts to contact jurors, by denying him a hearing to confront accusers, and by acting partial at resentencing. As mentioned above, petitioner cannot raise arguments of judicial misconduct when he failed to raise such arguments in the states courts. Therefore, he is not entitled to habeas relief on these claims.

While not framed as a judicial misconduct argument, petitioner did argue in the state court that the trial court erred in denying his *pro se* motion for a new trial. To the extent petitioner tries to raise this argument in his habeas petition, the Court denies relief. The Kansas Court of Appeals affirmed the district court's denial of a new trial because petitioner filed his *pro se* motion out of time. The decision by the Kansas Court of Appeals was not unreasonable, and petitioner is not entitled to relief.

**IT IS THEREFORE ORDERED BY THE COURT** that the Petition for a Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED BY THE COURT** that petitioner's following motions are **DENIED**: Motion for Hearing and Recusal (Doc. 61); Motion for Order (Doc. 62); Motion for Order

and Sanctions (Doc. 68); Motion for Hearing, Protective Order, and Sanctions (Doc. 74); and Motion

for Emergency Intervention (Doc. 76).

**IT IS FURTHER ORDERED BY THE COURT** that respondents' Motions to Strike

(Docs. 66, 69) are **DENIED.**

**IT IS FURTHER ORDERED BY THE COURT** that respondents' Motion to Strike and

Motion for Sanctions (Docs. 72, 73) are **GRANTED.**  The Clerk of the Court is hereby ordered to

strike from the record Docs. 70 and 71.

**IT IS SO ORDERED**.

Dated this 1st_____ day of November 2005.

 S/ Julie A. Robinson_____
Julie A. Robinson
United States District Judge